## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
SUNIL MEHRA, M.D.,                      :
                                        :
                    Plaintiff,          :
                                        :          Case No. 11-3854(FLW)(DEA)
            v.                          :
                                        :
PFIZER RETIREMENT COMMITTEE :                      **OPINION**
AND PFIZER INC.,                        :
                                        :
                    Defendants.         :
_____ :

**WOLFSON, United States District Judge:**

This matter arises out of a Complaint filed by Plaintiff Sunil Mehra, M.D. ("Plaintiff" or

"Mehra"), alleging that Defendants Pfizer Inc. ("Pfizer") and Pfizer Retirement Committee (the

"Retirement Committee") (collectively, "Defendants") violated their fiduciary duties under the

Employment Retirement Income Security Act ("ERISA"), § 502(a), 29 U.S.C. § 1132, when

they denied Plaintiff certain pension benefits following his severance from Pfizer. For the

reasons that follow, the Court grants Defendants' motion in its entirety.

### I.      BACKGROUND

The facts in this case are largely undisputed, and are drawn from the parties' Local Rule

56.1 statements of material facts. Additional and disputed facts will be set forth as necessary.

#### A.      The Pfizer Pension Plan

Employees of Pfizer are generally provided with certain severance benefits as well as

other additional benefits, both of which are subject to eligibility requirements (the "Separation

Plan"). See Def Facts, ¶¶ 3-4.[1] Under circumstances relevant to the instant matter, in addition to severance benefits, the Separation Plan provides employees who are terminated as part of Pfizer's "Adapting to Scale" ("AtS") reduction in force initiative with additional benefits, including but not limited to benefits under Pfizer's Consolidated Pension Plan ("Pension Plan").[2] Id. at ¶ 4. Under the terms of the Pension Plan, as incorporated into the Separation Plan, employees who meet (1) certain conditions as set forth in Appendix B of the Pension Plan, and (2) the age and length of service criteria as required by AtS, receive an "enhancement" in the form of a credit of up to five years of age or service or combination thereof for the purpose of determining early and normal retirement eligibility. Id. at ¶¶ 4-5. Thus, an employee who is terminated under the AtS initiative, and who is eligible for and satisfies the requirements of this enhancement, can obtain full, unreduced, pension benefits if his or her actual age is 60 or older (i.e., the "enhanced" age, after the addition of the AtS enhancement, equals 65 or older) at the time of termination. Id. at ¶ 5. This enhancement and its corresponding eligibility requirements are also set forth in the Summary of Material Modifications for Pfizer Plans (the "SMM"), which provides, inter alia, that an employee is eligible for enhanced full retirement if he or she is at least age 60 at the time of termination. Id. at ¶ 7. Otherwise, the SMM indicates that an employee less than age 60 will receive only enhanced early retirement benefits. Id. at ¶ 6. The SMM further states that any employee who had earned more than $132,000 in pensionable

---

[1] "Def. Facts" refers to Defendants' Rule 56.1 Statement of Material Facts as to which No Genuine Issues Exist. Dkt. No. 21-3. As noted above, because most of these facts are undisputed by the parties, I generally refer only to Defendant's Statement of Material Facts in this Opinion; where facts are disputed or supplemented by Plaintiff, an appropriate citation will follow.
[2] According to Defendants, the Pension Plan incorporated those individuals who were eligible for and participated in a former plan entitled the "Annuity Plan," of which Plaintiff was a participant. See Def. Facts, ¶ 4 n.1.

earnings in 2004 would receive the enhanced benefits as additional severance paid by Pfizer, and not in connection with any qualified or non-qualified retirement plan. Id. at ¶ 8.

With respect to the administration of the Pension Plan, Pfizer has established the Retirement Committee as the "Plan Administrator" and the named ERISA fiduciary. Id. at ¶ 9. The Retirement Committee maintains sole and complete discretionary responsibility for the general operation of the Pension Plan and for reviewing claims under the Pension Plan, including claims relating to the enhancement of retirement benefits under the AtS initiative. Id. at ¶¶ 9-10. In that connection, the Retirement Committee is the final review committee for claims under the Pension Plan, and decisions made by the Retirement Committee are conclusive and binding on all parties, subject only to further judicial review as allowed by ERISA. Id. at ¶ 10.

### B. Plaintiff's Employment, Termination, and Claim for Benefits

Plaintiff first began his employment with Pfizer as a Medical Director in 2004. Def. Facts, ¶ 2. In or around early April 2009, Plaintiff was informed that he would be involuntarily terminated under Pfizer's AtS initiative. Id. at ¶¶ 4, 11. Pfizer initially planned to terminate Plaintiff that same month, April, but on or about April 10, 2009, Plaintiff was informed that he would be able to assume an interim position, with a resultant delay in his termination. Id. at ¶¶ 11, 12; Pl. Facts, ¶ 11; see also Deposition of Sunil Mehra, M.D. ("Pl. Dep."), at 15:4-17.[3] Subsequently, on or around June 22, 2009, Pfizer informed Plaintiff he would be terminated under AtS on September 1, 2009. Def. Facts, ¶ 13.

As part of AtS, Pfizer conducted "Official Notification Meetings" ("ONM") to provide employees who were subject to AtS termination with additional information regarding their severance. Id. at ¶ 14. At an ONM, Pfizer, through an employee supervising AtS, would supply

---

[3] Portions of the Pl. Dep. are attached as Exhibit 3 to the Declaration of John M. Nolan, Esq., submitted with Defendants' motion for summary judgment.

employees that were scheduled to be terminated with a general overview of the separation package these employees would receive, the upcoming steps in the AtS termination process, and available outplacement benefits. Id.

Plaintiff was invited to attend an ONM on July 2, 2009, apparently based on the date of his scheduled termination, but because Plaintiff was out of state on that date, he participated in the ONM via telephone. Id. at ¶¶ 14-15, 17. The July 2 ONM was conducted by Pfizer employee Donna Breen, who was serving as an "AtS Lead" at that time and who was generally responsible for conducting ONMs. Id. at ¶¶ 15-16. In that regard, Ms. Breen was not responsible or trained for anything other than delivering general information regarding employee benefits, i.e., she had no responsibility to provide specific information about the benefits an employee would receive as part of his or her termination under AtS. Id. at ¶ 16. The extent of Ms. Breen's role regarding benefits was to direct employees to review "Separation Kits" they were to receive as part of AtS, and/or to contract Ernst & Young or HR Source – entities designated to handle specific inquiries as to severance benefits. Id. Additionally, during the ONM on July 2, the employees subject to termination were instructed to tell Pfizer if they found a new job with a start date earlier than their scheduled September 1, 2009 termination date. Id. at ¶ 17. If this occurred, the employees were informed, they would receive a severance earlier than September 1, and their benefits would be adjusted accordingly. Id.

Following the July 2 ONM, Plaintiff received his Separation Kit on or about July 3, 2009. Id. at ¶ 18. Included in the Separation Kit was a Personalized Benefits Statement ("Personalized Statement"), which set forth the details of Plaintiff's enhanced benefits under AtS, with an estimated benefit of $102,387.86. As explained to Plaintiff on page five of his Personalized Statement under the heading "Pension Plan Benefits" and the subheading "AtS Enhancement":

If you execute the Release Agreement connected with your involuntary Adapting to Scale (AtS) termination under the Pfizer Employee Separation Plan, as a Highly Compensated Employee, you are eligible to receive enhanced pension benefits as additional severance out of general assets of the Company and not in connection with any qualified or non-qualified plan. In addition to the above benefit, you will receive a lump sum payment estimated to be in the amount of $102,387.46, approximately two to three months after your termination.

Personalized Statement, 5.[4] In addition, on the first page and first paragraph of the Personalized Statement, Plaintiff was informed:

Amounts shown on this statement are calculated based on your termination date of September 1, 2009. These amounts are based on current information. Any changes between now and your actual termination may alter the amounts shown on your statement.

For questions regarding your benefits due to separation, contact the Ernst & Young Separation Assistance Line at 1-800-743-7003.

Id. at 1.[5]

Another form provided in the Separation Kit that Plaintiff received, entitled "Important Separation Information," explained that with respect to any "external job" that the employee might take prior to the scheduled termination date under AtS, the employee would be terminated from Pfizer effective the date the employee began working for and being paid by a company other than Pfizer. Important Separation Information, 1.[6] The document further advised that this "early termination date":

- Will not change how your severance or vacation pay is calculated.
- Will impact your benefits based on this early termination date (for example: pension, retiree medical eligibility, benefit milestones, GPP, stock options).

---

[4] The Personalized Statement is attached as Exhibit 16 to the Declaration of John M. Nolan, Esq.

[5] Similarly, in connection with "Savings Plan Benefits," the Personalized Statement also advised employees to contact HR Source either via a listed website or an "866" number. Personalized Statement at 6.

[6] The Important Separation Form is attached as Exhibit 18 to the Declaration of John M. Nolan, Esq.

Id. (emphasis in original).

Finally, the Separation Kit contained several other documents that explicitly directed the employee to review relevant Separation Plan and Pension Plan documents, including the SMM. See Def. Facts, ¶¶ 21, 23 (citing "Initiating Your Retirement Benefits"[7] and "U.S. Benefits Information" documents).

In the meantime, on or around June 9, 2009, Plaintiff accepted a position as Chief Medical Officer at Mylan Pharmaceuticals ("Mylan"), a company other than Pfizer, by signing an acknowledgment that he would begin work with Mylan on July 13, 2009.[8] Id. at ¶¶ 25-26. Plaintiff then, through a phone call to a Pfizer representative, notified Pfizer on July 13 that he had accepted employment with another company, explaining that he was scheduled to start at Mylan on July 19.[9] Id. at ¶ 28. During this phone call, Plaintiff did not request any information on, or otherwise discuss, how his departure from Pfizer prior to September 1 would affect his severance or enhanced pension benefit. Id. On or about July 22, Plaintiff signed and delivered the Release Agreement included in the Separation Kit and referenced in the Personalized Statement, which Pfizer received several days later. Id. at ¶ 29.

Based on Plaintiff's date of separation being prior to September 1, 2009, Pfizer adjusted the calculation of Plaintiff's severance benefits, including the enhanced pension benefit. See id. at ¶ 30. Specifically, it was determined that Plaintiff had not yet reached age 60 at the time of his retirement, and thus he qualified only for enhanced early, rather than full, retirement benefits. In light of this adjustment, Plaintiff received a lump sum payment in the amount of $34,871.59,

_____

[7]    Initiating Your Retirement Benefits is attached as Exhibit 17 to the Declaration of John M. Nolan, Esq.

[8]    Although Plaintiff was scheduled to be terminated on September 1, 2009, under the AtS initiative, the last time he was physically in a Pfizer office was around June 25, 2009. Def. Facts, ¶ 27 n.3.

[9]    No explanation is given for why Plaintiff would begin work on July 19 instead of July 13.

instead of the amount set forth in the Personalized Statement of $102,387.46. See id. Following receipt of benefits in this amount, Plaintiff contacted HR Source and Ernst & Young to find out why he had not yet been paid the entire $102,387.46 in benefits that he believed were due to him under the terms of the AtS enhancement. Id. at ¶ 32. After several inquiries, Plaintiff was informed that because he had not reached age 60 at the time of his termination with Pfizer, he only qualified for enhanced early retirement benefits, not the enhanced full retirement benefits. Id.

On February 7, 2010, Plaintiff submitted a claim for benefits to the appropriate Pension Plan administrator, seeking enhanced full retirement benefits (the "Initial Claim"). Id. at ¶ 33; see also Initial Claim.[10] In the Initial Claim, Plaintiff contended, inter alia, that he was "ill-informed" and was provided "incomplete information" about the eligibility requirements for his benefits, even though he had spoken with "many colleagues at Pfizer, Fidelity HR Source, Ernst & Young, and Pension Specialist." Def. Facts, ¶ 34; see also Initial Claim, 2-3. The Initial Claim was denied on the ground that Plaintiff had failed to reach age 60 prior to his termination with Pfizer. Def. Facts, ¶¶ 35-37. Plaintiff then appealed the denial to the Retirement Committee, again asserting that he was "ignorant of the details" regarding the AtS enhancement criteria, and that "HR did not explain to [Plaintiff] the implications of [his] early exit" from Pfizer to Mylan. Id. at ¶ 38. The Retirement Committee denied Plaintiff's appeal on the same basis: that Plaintiff failed to reach age 60 at the time of his termination. Id. at ¶¶ 39-40; see also Retirement Committee Denial Letter.[11] The Retirement Committee did not directly address Plaintiff's contentions that he had been inadequately advised of the requirements for benefits

---

[10]     The Initial Claim is attached as Exhibit 27 to the Declaration of John M. Nolan, Esq.
[11]     The Retirement Committee Denial Letter is attached as Exhibit 28 to the Declaration of John M. Nolan, Esq.

under AtS or the Pension Plan, but instead merely referenced the provisions of the AtS documents and SMM. See Def. Facts, ¶¶ 33-40.

After exhausting these administrative options, Plaintiff filed the instant suit on July 5, 2011. In the Complaint, Plaintiff asserts against both Defendants one count of breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C § 1132. Essentially, Plaintiff alleges that employees of Pfizer and the Retirement Committee represented to Plaintiff that he would receive benefits in the amount of $102,387.46 regardless of his actual termination date, and thus Defendants, in breach of their fiduciary duty, misled Plaintiff into believing that terminating his employment prior to September 1, 2009 would not affect the amount of these benefits. Def. Facts, ¶ 41. Defendants move for summary judgment on the Complaint, asserting that there is no material factual dispute and summary judgment should be granted against Plaintiff because: (1) Plaintiff cannot properly bring a claim for breach of fiduciary duty given that this is merely a claim for benefits; and/or (2) Pfizer is not a proper defendant because it owed no fiduciary obligation to Plaintiff, and the undisputed facts do not support a claim for breach of fiduciary duty against the Retirement Committee.[12]

## II.   STANDARD OF REVIEW

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a

---

[12] Defendants also seek leave to file a request for reasonable attorney fees should they prevail on their summary judgment motion. See 29 U.S.C. § 1132(g)(1) (providing, in relevant part, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). Defendants are not required to seek leave of the Court to file a motion for fees. Given that Defendants are the prevailing party, they may pursue a motion for fees within a reasonable time after the filing of this Opinion.

reasonable jury could return a verdict in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. See id. at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." Celotex v. Catrett, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. Id. at 324; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. Plaintiff's Claim under ERISA § 502(a)(3)

Defendants first challenge whether Plaintiff properly can bring a claim for breach of fiduciary duty. According to Defendants, Plaintiff's Complaint amounts to nothing more than an appeal of the denial of his claim for enhanced full benefits and thus should be considered under § 502(a)(1)(B).[13] Defendants further argue that the appropriate standard of review for a denial of benefits claim is whether the reviewing administrative body acted in an arbitrary or capricious

---

[13] Section 502(a)(1)(B) provides that a civil action may be brought by an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

manner or contrary to law.  See, e.g., Firestone Tired & Rubber Co. v. Bruch, 489 U.S. 101, 115

(1989).  Because the record does not support such a finding, Defendants reason, this Court must

dismiss Plaintiff's Complaint.  Plaintiff counters that his Complaint is premised on having been

misled by Defendants, and not on his eligibility for benefits, and thus his claim is properly

brought and considered under § 502(a)(3).[14]

Defendants contend that an individual may not bring a claim for breach of fiduciary duty

when such a claim is duplicative of a claim based upon denial of benefits, citing Varity Corp. v.

Howe, 516 U.S. 489, 507-15 (1996) (holding that a claim under § 502(a)(3) will lie only if no

other claim can be brought under ERISA).  See also Precopio v. Bankers Life & Cas. Co., No.

01-5721(RBK), 2004 WL 5284512, at *31 (D.N.J. Aug 10, 2004) ("[E]quitable relief under

Section 502(a)(3)(B) is only 'appropriate' when there is no alternative means for the plaintiff to

recover his losses.").  In fact, when an individual brings a multi-count complaint asserting both a

claim for breach of fiduciary duty and a claim for improper denial of benefits, courts generally

will dismiss the fiduciary claim when it is premised on the same facts and argument as the claim

for benefits.  See id. at *31 ("[W]here a participant or beneficiary seeks a remedy that is

otherwise recoverable under other provisions of Section 502, the individual cannot also seek that

same remedy via a breach of fiduciary duty claim under Section 502(a)(3)(B)'s catchall

provision."); Schultz v. Prudential Ins. Co., 678 F. Supp. 2d 771, 780 (N.D. Ill. 2010) (same).  In

that connection, the Third Circuit has cautioned that it is improper to allow a breach of fiduciary

duty claim to proceed when it is merely akin to a claim to enforce the terms of a benefit plan.

See D'Amico v. CBS Corp., 297 F.3d 287, 291 (3d Cir. 2002).

---

[14]     Section 502(a)(3)(B) provides that a civil action may be brought by an ERISA plan
participant, beneficiary, or fiduciary "to obtain other appropriate equitable relief (i) to redress
such violations [of ERISA] or (ii) to enforce any provisions of this subchapter or the terms of the
plan."  29 U.S.C. § 1132(a)(3)(B).

In this case, Plaintiff has brought only one claim premised solely on Defendants' alleged misrepresentations and omissions in violation of their fiduciary duties. Nowhere does Plaintiff allege or argue that Defendants misinterpreted or misapplied the requirements of the Pension Plan with respect to Plaintiff. Indeed, Plaintiff admits that, based on his early termination date prior to September 1, 2009, he does not in fact qualify for enhanced full benefits under AtS. Def. Facts, ¶ 31. Instead, Plaintiff argues that had he been adequately informed and not misled about the effect of his taking another job prior to September 1, he would not have started his job with Mylan before that date and would have remained at Pfizer until his scheduled termination. See Pl. Counter. Facts, ¶ 11.

According to the Third Circuit in Harrow v. Prudential Ins. Co. of Am.,[15] Plaintiff's claim should not be treated as a denial of benefits claim because Plaintiff does not seek an interpretation of the terms of the Pension Plan; rather, Plaintiff seeks a determination that Defendants failed to fulfill their fiduciary obligations under ERISA to adequately inform and not mislead Plaintiff with respect to the effect of his decision to take employment with Mylan. See 279 F.3d 244, 254 (3d Cir. 2002) (finding that "[a] claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." (Internal quotation marks omitted.)). Here, Plaintiff is seeking an interpretation of Defendants' fiduciary obligations under ERISA, and a determination of whether these obligations were violated. Thus, under the test set forth in Harrow, Plaintiff may properly bring his claim under § 502(a)(3). Indeed, the Third Circuit has previously held that "where a fiduciary breach causes

---

[15] For reasons unknown to the Court, neither Plaintiff nor Defendants cited the Harrow case in their papers, which is perplexing given that it is directly on point and dispositive of the parties' arguments in this regard.

harm to a beneficiary, that beneficiary has a claim for equitable relief pursuant to section 502(a)(3) of ERISA, which authorizes suits by participants for 'appropriate equitable relief' to redress violations of ERISA."[16] In re Unisys Corp. Retiree Med. Ben. ERISA Litig. (Unisys II), 57 F.3d 1255, 1267 (3d Cir. 1995); id. at 1268 (concluding that because "'undoubtedly there will be instances in which a fiduciary's actions harm an individual beneficiary, but do not harm the plan,' . . . 'section 502(a)(3) authorizes the award of "appropriate equitable relief" directly to a participant or beneficiary to "redress" any act or practice which violates any provision of this title including a breach of the statutorily created fiduciary duty of an administrator.'" (Quoting Bixler v. Central Pa. Teamsters Health-Welfare Fund, 12 F.3d 1292, 1298 (3d Cir. 1993)).[17] Thus, I conclude that Plaintiff properly may pursue a claim under § 502(a)(3) for breach of fiduciary duty.

---

[16] I note, however, that in another line of cases, the Third Circuit has explained that the language of § 502(a)(3) – "appropriate equitable relief" – generally limits this type of claim to injunctive relief or restitution, rather than a claim for money damages. See, e.g., Ream v. Frey, 107 F.3d 147, 153 n.5 (3d Cir. 1997) ("'Appropriate equitable relief'" generally is limited to traditional equitable relief such as restitution and injunctions rather than money damages."). Nevertheless, the Ream court further explained that "§ 502(a)(3) does not necessarily bar all forms of money damages," and upheld the award in that case because "Ream sought only to recover his vested interest in the plan which largely reflected his own contributions . . . [and which], regardless of the language in the complaint, easily may be characterized as restitution and the Bank does not contend otherwise." Id. (citations omitted); In re Unisys Corp. Retiree Med. Ben. ERISA Litig. (Unisys II), 57 F.3d 1255, 1269 (3d Cir. 1995) (explaining that "reimbursement for back benefits . . . [is] restitutionary in nature and thus equitable"). Because Plaintiff's claim for his full enhanced pension benefit could reasonably be construed as a "reimbursement for back benefits," the fact that Plaintiff's claim for equitable relief requests money damages does not preclude him from proceeding under § 502(a)(3). See Ream v. Frey, 107 F.3d at 153 n.5.

[17] Although Unisys II and Bixler predate the Supreme Court's decision in Varity Corp., which addressed the scope and nature of relief under § 502(a)(3), neither of those cases have been overruled or called into question by Varity or any subsequent controlling case law. See Ream v. Frey, 107 F.3d at 152 ("In Varity, the [Supreme] Court agreed with our decision in Bixler v. Central Pennsylvania Teamsters Health and Welfare Fund, 12 F.3d 1292 (3d Cir. 1993), that ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes lawsuits for individualized equitable relief for breach of fiduciary obligations.").

### B.    Pfizer as Defendant

Defendants next argue that, if the Court allows Plaintiff to pursue his breach of fiduciary duty claim, Pfizer nevertheless should be dismissed as an improper defendant.  Specifically, Defendants assert that Pfizer does not meet the definition of a fiduciary under ERISA.  Plaintiff, in opposition, contends that he was allegedly mislead and/or misinformed by employees of Pfizer, and that this serves as a basis for imposing fiduciary liability on Pfizer.  See Pl. Opp., 15-17.  Plaintiff's sole counterargument is that certain Pfizer employees made misrepresentations to Plaintiff about the requirements of the Pension Plan, as they related to the AtS pension enhancement, and, in doing so, were operating in a fiduciary capacity with respect to the Pension Plan.  The threshold question, then, is whether Pfizer can be held liable as a fiduciary based upon the actions of its employees.

With respect to fiduciaries, ERISA requires each plan to have one or more named fiduciaries that are granted the authority to manage the operation and administration of the plan.  See 29 U.S.C. § 1102(a)(1).  Under ERISA's definition:

> a person is a fiduciary with respect to a plan to the extent
>
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

Id. § 1002(21)(A); see also Edmonson v. Lincoln Nat. Life Ins. Co., __ F.3d __, __, 2013 WL 4007553, at *10 (3d Cir., Aug. 7, 2013) (citing 29 U.S.C. § 1000(21)(A)).  Because an entity is only a fiduciary to the extent it possesses authority or discretionary control over the plan, see In

re Unisys Corp. Retiree Med. Benefits ERISA Litig. (Unisys IV), 579 F.3d 220, 228 (3d Cir. 2009), the relevant inquiry is "whether [the entity] is a fiduciary with respect to the particular activity in question." Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003) (internal quotation omitted). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000) (emphasis added); Renfro v. Unisys Corp., 671 F.3d 314, 321-23 (3d Cir. 2011).

Initially, I note that Plaintiff does not challenge the fact that the Retirement Committee, and not Pfizer, is the identified Plan Administrator and the named fiduciary for the Pension Plan, which includes the AtS pension enhancement at issue in this case. Def. Facts, ¶ 9; Pl. Counter Facts, ¶ 9. In that connection, the parties agree that the Retirement Committee is in charge of the benefit review and determination process, and that any determination made by the Retirement Committee with respect to benefits under the Pension Plan is conclusive and binding on the parties and not subject to further administrative review. Def. Facts, ¶ 10; Pl. Counter Facts, ¶ 10. Nor do the Pension Plan documents identify Pfizer in any way as a fiduciary or administrator of the Pension Plan.[18]

---

[18] In that connection, I note that nothing prevents the provider of an ERISA covered plan from delegating administrative and managerial responsibilities, and the concomitant fiduciary obligations, to another entity:

> [W]here an administrator of a plan decides matters required in plan administration or involving obligations imposed upon the administrator by the plan, the fiduciary duties imposed by ERISA attach. Where, however, employers conduct businesses and make business decisions not regulated by ERISA, no fiduciary duties apply. And, when employers wear "two hats" as employers and as administrators . . .

As outlined above, ERISA specifically sets forth the criteria for an entity to be deemed a fiduciary. The lynchpin of fiduciary status is discretion, and discretion is a fact specific inquiry. See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994). In that regard, Plaintiff must sufficiently allege, and the undisputed facts must demonstrate, the degree of Pfizer's discretion in managing the Pension Plan and determining Plaintiff's eligibility for benefits – i.e., whether Pfizer "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." Id. at 233. If such is the case, Pfizer may be considered a fiduciary, and therefore, an appropriate defendant under ERISA. On the other hand, allegations and facts showing merely ministerial tasks, such as providing general information about the Pension Plan, without any showing that Pfizer had discretion on how to administer the plan, would be insufficient to establish fiduciary status. See Edmonson v. Lincoln Nat. Life Ins. Co., __ F.3d at __, 2013 WL 4007553, at *10; Malia v. General Elec. Co, 23 F.3d 828, 833 (3d Cir. 1994); Confer v. Custom Engineering Co., 952 F.2d 34, 39 (3d Cir. 1991); Briglia v. Horizon Healthcare Services, Inc., No. 03-6033, 2005 WL 1140687, at *2 (D.N.J. May 13, 2005).

In this case, Plaintiff's sole basis for treating Pfizer as a fiduciary is that Pfizer employees, "communicated, and advised, Mehra regarding benefits at the ONM and in his telephone calls." Pl. Opp. at 16. Relying on the Supreme Court's decision in Varity Corp v. Howe, 515 U.S. 489, and the Third Circuit's decision in Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. and Research Found., 334 F.3d 365, 385 (3d Cir. 2004),

_____

"they assume fiduciary status 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA."

Payonk v. HMW Industries, Inc., 883 F.2d 221, 225 (3d Cir. 1989) (citations omitted).

Plaintiff contends that such communications with plan participants constitute a fiduciary function. Plaintiff's reliance on these cases is misplaced.[19]

In <u>Varity</u> the employer acted as both the ERISA plan provider <u>and</u> plan administrator. <u>Varity</u>, 516 U.S. at 498-501. Thus, in analyzing whether the employer breached any fiduciary obligations based on certain acts or omissions, it was necessary to first determine whether the employer's actions occurred when it was acting in its capacity as plan administrator. <u>Id.</u> at 498. Conversely, in <u>Burnstein</u>, the parties agreed that one of the defendants, Kasperbauer, was the plan administrator and therefore "was clearly a fiduciary . . . for purposes of . . . communicating with plan participants." 334 F.3d at 385 (internal quotation marks omitted). Contrary to Plaintiff's position, neither of these cases provides support for the argument that merely communicating information about an ERISA plan transforms the speaker into a fiduciary. Indeed, both the <u>Varity</u> and <u>Burnstein</u> courts relied on the above referenced statutory and common law definitions of a fiduciary. <u>E.g.</u>, <u>Burnstein</u>, 334 F.3d at 384 ("[U]nder ERISA, a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." (Internal quotation marks omitted.) (Quoting <u>Varity Corp.</u>, 516 U.S. at 527; 29 U.S.C. § 1002(21)(A)(iii))).

Here, neither the allegations in the Complaint nor in the undisputed facts reveal any support for finding that Pfizer is a plan fiduciary. Instead, Plaintiff references only the fact that certain Pfizer employees communicated some generalized details about the Pension Plan and AtS benefits to him. Nowhere does Plaintiff allege or point to facts showing that these employees or Pfizer "maintained any authority or control over the management of the plan's assets,

---

[19]     Indeed, as explained <u>infra</u>, Plaintiff's arguments in this regard appear to be based on a misunderstanding of agency principles under ERISA, and are instead more properly considered in connection with whether the Retirement Committee can be held liable for the actions of Pfizer's employees. <u>See</u> <u>infra</u>, Part C.2.

management of the plan in general, or maintained any responsibility over the administration of the plan." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d at 233. As previously stated, communications regarding general plan benefits, alone, are insufficient to confer fiduciary status on the speaker. See Confer v. Custom Engineering Co., 952 F.2d at 39. Thus, given that Pfizer named the Retirement Committee as the fiduciary and administrator of the Pension Plan and the dearth of facts to show or suggest that Pfizer retained and exercised any authority or control over the Pension Plan, I conclude that Pfizer is not a fiduciary with respect to the Pension Plan or AtS. Accordingly, Plaintiff has no claim for breach of fiduciary duty against Pfizer, and I will grant summary judgment in Pfizer's favor for that reason.

### C. Retirement Committee's Liability

Defendants further seek summary judgment with respect to Plaintiff's claims against the Retirement Committee because the undisputed facts fail to show any breach of the Retirement Committee's fiduciary obligations toward Plaintiff. Plaintiff opposes summary judgment on the grounds that material factual disputes exist, rendering summary judgment inappropriate, and that the other, undisputed, facts show that the Retirement Committee breached its fiduciary responsibility toward Plaintiff when it failed to adequately and clearly inform Plaintiff of the effect that termination prior to September 1, 2009 would have on the amount of his benefits under the AtS enhancement. As the parties do not dispute that the Retirement Committee owes a fiduciary obligation to Plaintiff with respect to the administration of the benefits at issue in this case, see supra Part III.B, I begin by examining the nature of that obligation.

An ERISA fiduciary is statutorily required to:

discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A)-(B).  In the Third Circuit, in order to make out a breach of fiduciary duty claim of the kind here asserted, Plaintiff must establish each of the following elements: (1) the Retirement Committee's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the Retirement Committee; (3) the materiality of that misrepresentation; and (4) detrimental reliance by Plaintiff on the misrepresentation.  Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001) (citing Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000), and Unisys III, 242 F.3d 497).

With respect to the first element, the parties agree that the Retirement Committee generally is an ERISA fiduciary with respect to the Pension Plan, including the AtS pension enhancement benefit at issue in this case.  However, the parties disagree whether the alleged misrepresentations/omissions by Pfizer employees involved the Retirement Committee "acting as a fiduciary."  In that connection, and support of his breach of fiduciary duty claim, Plaintiff makes two arguments: (1) Pfizer employees who spoke to Plaintiff regarding the Pension Plan and AtS benefits were acting under the apparent authority of the Retirement Committee in its fiduciary capacity, and thus their statements and actions bind the Retirement Committee, and (2) the operative Pension Plan and AtS benefits documents – particularly the Personalized Statement – were ambiguous with respect to the eligibility requirements for the enhanced full retirement benefit, which, when coupled with the statements of the Pfizer employees, further support a finding of breach of the Retirement Committee's fiduciary obligation.  I begin with Plaintiff's second argument because the plan documents are given great weight in analyzing whether a

fiduciary violated its disclosure obligations in an ERISA matter.  Unisys II, 57 F.3d at 1263-64 (explaining that where plan documents clearly explain the benefits in question, there can be no breach of fiduciary duty absent any affirmative and materially misleading statement regarding the terms of a plan by a plan administrator or similar individual operating in a fiduciary capacity).

### 1.     Ambiguity of the Plan Documents

Under ERISA, a fiduciary has statutory duties to disclose specific information regarding the covered plan.  See generally Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 142-45 (1985).  For example, 29 U.S.C. § 1102(a)(1) provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument . . . ."  Under § 1022(a), "[a] summary plan description ["SPD"] of any employee benefit plan shall be furnished to [plan] participants" and this SPD "shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."[20]  29 U.S.C. § 1022(a)(1).  ERISA further requires that the SPD "explain the circumstances which may result in disqualification, ineligibility, or denial or loss of benefits," id. § 1022(b), "in a manner that is calculated to be understood by the average plan participant."  Id. § 1022(a)(1).  Significantly, a SPD "must not have the effect [of] misleading, misinforming or failing to inform participants and beneficiaries."  29 C.F.R. § 2520-102-2(b) (2013).  A fiduciary generally will satisfy its statutory disclosure obligations regarding the terms of a plan by distributing a SPD that complies with ERISA.  Unisys II, 57 F.3d at 1263-64 (collecting cases).

Here, Plaintiff's sole argument with regard to the adequacy of the plan documents turns on the information provided to Plaintiff in the Personalized Statement, which was included in the

---

[20]     I note that Plaintiff is challenging the adequacy of the Personalized Statement, which is not the SPD for the Pension Plan, but I am nonetheless guided by these principles in my analysis.

Separation Kit Plaintiff received as part of the AtS initiative.[21]  In the interest of clarity in

analyzing Plaintiff's argument in this regard, I set forth below the entire relevant portion of the

Personalized Statement in its original format, which begins on page five under the heading

"Pension Plan Benefits":

### PENSION PLAN BENEFITS

You are vested in the Pfizer Retirement Annuity Plan and are eligible for an unenhanced single life annuity payment estimated to be $1,508.14 a month, payable immediately after you termination date.

Note: A portion of your benefit may be payable by the Supplemental Retirement Plan and would be subject to FICA taxes.

### AtS Enhancement

If you execute the Release Agreement connected with your involuntary Adapting to Scale (AtS) termination under the Pfizer Employee Separation Plan, as a Highly Compensated Employee, you are eligible to receive enhanced pension benefits as additional severance out of general assets of the Company and not in connection with any qualified or non-qualified plan.  In addition to the above benefit, you will receive a lump sum payment estimated to be in the amount of $102,387.46, approximately two to three months after your termination.  This enhanced benefit will be taxed as regular income and is not eligible to be rolled into an IRA or another retirement plan.  You are eligible for this enhanced pension benefit if you return your signed *Release Agreement*.

* * *

If you wish to begin your pension benefits on the first day of the month following your termination date, contact *hrSource* at 1-866-4SOURCE (1-866-476-8723), and follow the prompts for Retirement. . . .

* * *

Personalized Statement at 5-6.

---

[21]     To be sure, Plaintiff has raised no allegation or argument that he never received plan documents, or that the documents he received were incomplete.  Rather, Plaintiff's sole argument, as discussed above, is that a portion of the Personalized Statement is confusing.

Plaintiff points to a portion of the language in the paragraph that immediately follows the subheading "AtS Enhancement" as being ambiguous and confusing:

> [Y]ou are eligible to receive enhanced pension benefits as additional severance out of general assets of the Company and not in connection with any qualified or non-qualified plan.  In addition to the above benefit, you will receive a lump sum payment estimated to be in the amount of $102,387.46, approximately two to three months after your termination.

Id. at 5 (emphasis added).  In his deposition, Plaintiff testified that he interpreted the above emphasized language to differentiate between two types of additional benefits provided under the AtS Enhancement; in other words, Plaintiff understood this language to mean that the "enhanced pension benefits" and the "lump sum payment" referenced in this portion of the Personalized Statement were actually separate, independent benefits, each subject to different qualifying criteria.  See Pl. Dep. at 71:24 to 72:6.[22]  Although the cited language might not be a model of clarity, for the following reasons, I find that the Personalized Statement is not ambiguous.

In analyzing ERISA plan documents, "[i]f the court finds but one reasonable interpretation, then a fortiori there can be no ambiguity.  However, if the language is susceptible to more than one reasonable interpretation, then it will be found to be ambiguous."  In re Unisys Corp. Retiree Med. Ben. ERISA Litig. (Unisys I), 58 F.3d 896, 903 (3d Cir. 1995) (citations omitted; internal quotation marks omitted) (quoting Curcio v. John Hancock Life Ins. Co., 33 F.3d at 231).  In determining if more than one interpretation is reasonable, a court should

_____

[22]    Portions of Plaintiff's Deposition Testimony are attached at Exhibit 3 to the Declaration of John M. Nolan, Esq.  In relevant part, Plaintiff testified as follows:

> To me, they are two different things.  You have an enhanced pension benefit.  Then you have, in addition to that, you have 102,000. So I'm saying they are different things.  So I'm getting an enhanced pension benefit, which is what the amount is. Plus I'm getting, in addition to that, $102,387.46.  So I'm not connecting the two.  That's exactly what it says here.

Pl. Dep. at 71:24 to 72:6.

examine all relevant language and documents, and seemingly inconsistent provisions . . . must be construed to be harmonious." See id. at 904. The touchstone in this analysis is reasonableness; language is only ambiguous if it is susceptible to more than one reasonable interpretation. See id. at 903-904.

When the language highlighted by Plaintiff is read in the context of the entire paragraph the AtS Enhancement section, any alleged ambiguity is resolved. First, following the "in addition to the above benefit" language that Plaintiff focuses on as distinguishing a second benefit under the AtS Enhancement – i.e., a lump sum benefit that is "in addition to" the enhanced pension benefit – all further references are to a "benefit" in singular form. See Personalized Statement at 5 ("This enhanced benefit will be taxed . . . ." (Emphasis added.)); id. ("You are eligible for this enhanced pension benefit . . . ." (Emphasis added.)). Thus, the primary use of the term "benefit" as opposed to "benefits" throughout the AtS Enhancement paragraph runs counter to Plaintiff's reading that this paragraph contains references to multiple benefits.[23] Indeed, at the end of the paragraph, no distinction is made between the lump sum benefit and any "additional" pension enhancement benefit. Instead the paragraph simply closes with the text: "You are eligible for this enhanced pension benefit if you return your signed Release Agreement." Id. (underscored emphasis added).

Further undermining the reasonableness of Plaintiff's interpretation is that it renders the AtS Enhancement language more, rather than less, ambiguous by reading the "lump sum" language as being benefit separate from and in addition to the earlier referenced "enhanced pension benefits." The only benefit described in this paragraph is the lump sum payment; there is no reference to any other specific benefit. Thus, if, according to Plaintiff, the enhanced

---

[23] I also note that this subsection of the Personalized Statement is entitled "AtS Enhancement," not "enhancements."

pension benefit and the lump sum payment are not one and the same, then what constitutes the enhanced pension benefit is left undefined. Such a result is not internally harmonious, and therefore Plaintiff's reading cannot be considered reasonable. See In re Unisys I, 58 F.3d at 904.

Moreover, any lingering ambiguity is resolved by examining the language of the AtS Enhancement subsection in the context of the Personalized Statement as a whole. As set forth above, the "AtS Enhancement" subsection is found under the broader heading of "Pension Plan Benefits." Immediately after the "Pension Plan Benefits" section heading, but before the subheading titled "AtS Enhancement," is the following:

> You are vested in the Pfizer Retirement Annuity Plan and are eligible for an unenhanced single life annuity payment estimated to be $1,508.14 a month, payable immediately after you termination date.
>
> Note: A portion of your benefit may be payable by the Supplemental Retirement Plan and would be subject to FICA taxes.

Personalized Statement at 5 (emphasis added). Thus, a reasonable individual reading this section of the Personalized Statement concerning his or her Pension Plan benefits would first read the provision concerning his or her "benefit" under the Pfizer Retirement Annuity Plan. The reader would then progress to the section addressing the "additional" benefit under the AtS Enhancement subheading. The structure of this section of the Personalized Statement makes it clear that the language in the AtS Enhancement section – referring to the AtS pension enhancement being "[i]n addition to the above benefit" – is meant as a reference to the employee's Pfizer Retirement Annuity Plan benefit in the immediately preceding paragraphs.[24]

_____

[24] The AtS enhancement benefit is further clearly described as a "lump sum payment" that is an "additional severance . . . not in connection with any qualified or non-qualified plan." Personalized Statement at 5. This language regarding another plan is a clear reference to Plaintiff's Pfizer Retirement Annuity Plan benefit.

Finally, review of the Personalized Statement and the other materials and information conveyed to Plaintiff as part of the AtS initiative reveals nothing that reasonably could give rise to the understanding that these benefits were subject to different qualifying criteria. Throughout the Personalized Statement are numerous references − including in plain language on the first page of the document − to the fact that all benefits were calculated based on Plaintiff's September 1, 2009 termination date, and that any change in this date could affect the amount of the benefits listed in the Personalized Statement. See, e.g., Personalized Statement at 1; see also Important Separation Information at 1 (explaining that an early termination date "[w]ill impact your benefits based on this early termination date (for example: pension, retiree medical eligibility, benefit milestones, GPP, stock options)" (emphasis in original)). Indeed, Plaintiff acknowledged in his deposition that he understood the approximately $102,000 lump sum payment amount to be calculated based on his termination date of September 1, 2009, as reflected on the first page of the Personalized Statement. Pl. Dep. at 72:13 to 72:22.[25] Plaintiff has identified no document, other than the Personalized Statement, that he interpreted as describing two different enhanced pension-related benefits under the AtS initiative. Rather, the record and undisputed facts demonstrate that Plaintiff's confusion with the language in the

---

[25]      Plaintiff does dispute whether this language on this first page refers to the lump sum payment or solely to the calculation of certain benefits − i.e., vacation and bonus pay. Pl. Dep. at 72:18 to 72:22. This argument, however, arises from, and is more properly addressed in connection with, Plaintiff's alleged communications with Pfizer employees at and following his ONM, which he seems to believe modified the terms of the Personalized Statement. See Pl. Dep., 67:1 to 67:5 ("So when I read this [Personalized Statement] after that particular [ONM] meeting, I tied this statement [on page one] to what said that the meeting, that if you leave before September 1, your bonus and vacation pay are going to be adjusted accordingly."). The plain language of the Personalized Statement, standing alone, does not support Plaintiff's claim that a change in his September 1, 2009 termination date would only affect the calculation of his vacation and bonus pay. The first page of the Personalized Statement clearly indicates, without restriction as to any particular benefits, that the "amounts" listed within the document may be adjusted if Plaintiff's termination date changes. Personalized Statement at 1

Personalized Statement arose solely from his singular interpretation of the phrase "in addition to the above benefit." See id.; see also id. at 78:13 to 79:12 (explaining further in deposition testimony that the language of the Personalized Statement was the basis for his understanding that the enhanced pension benefit and lump sum payment were separate benefits due to Plaintiff).

For these reasons, I reject Plaintiff's interpretation of the Personalized Statement, as well as his claim that the language referring to the AtS pension enhancement is ambiguous and confusing. See In re New Valley Corp., 89 F.3d 143, 152 (3d Cir. 1996) (construing plan document as a whole in determining ambiguity of language in ERISA document). A document cannot be considered ambiguous based on an unreasonable alterative interpretation. See Unisys I, 58 F.3d at 903-904. Plaintiff has advanced no other basis for claiming that the Retirement Committee breached its fiduciary obligation with respect to the Personalized Statement, and thus I determine that the Retirement Committee satisfied its statutory disclosure obligations regarding the written terms of the Pension Plan. See Unisys II, 57 F.3d at 1263-64.

2.     Communications with Pfizer Employees

Plaintiff's final, and primary, basis for the Retirement Committee's alleged breach of fiduciary duty stems from communications he had with Pfizer employees on three separate occasions: (1) during the July 2, 2009 ONM, with Ms. Breen, the AtS Lead; (2) sometime between July 5 and July 7, with an unnamed representative on a phone call to a number that was provided to Plaintiff at the ONM; and (3) on July 13, with another unnamed representative at the same number as the previous call. Pl. Counter. Facts, ¶¶ 5-8, 10. According to Plaintiff, in all three of these conversations, he was provided with inadequate and/or misleading information regarding the effect that departure from Pfizer prior to September 1, 2009 would have on the amount of his enhanced pension benefit.

Liability for breach of fiduciary duty may arise when an ERISA fiduciary misinforms employees "through material misrepresentations and incomplete, inconsistent or contradictory disclosures." Unisys II, 57 F.3d at 1264. It is not enough that a misrepresentation by a fiduciary occurred, however; the misrepresentation must also be material. "In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." Id. (citing Fischer v. Philadelphia Elec. Co., 994 F.2d at 135); see also id. ("Our decisions in Bixler, Fischer, Curcio and Smith firmly establish that when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries.").

As discussed above in connection with Pfizer's liability, Plaintiff contends that he spoke with Pfizer employee Ms. Breen at his ONM, and with unnamed Pfizer employees via a "212 hotline" number supplied to him by Ms. Breen at the ONM. Plaintiff asserts that, in these communications, he was misled into believing that only the amount of his vacation and bonus benefits would be affected if he terminated his position with Pfizer prior to the scheduled September 1, 2009 date. See, e.g., Pl. Dep. at 67:1 to 67:8. In that regard, Plaintiff argues that these employees misled him about key details of the Pension Plan and AtS Enhancement, and did so while they were operating in a fiduciary capacity as a representative of the Retirement Committee. Notably, Plaintiff advances no argument or fact demonstrating that any actual representative or member of the Retirement Committee communicated with him, or that the Pfizer employees who did communicate with him were doing so as actual agents or representatives of the Retirement Committee. Thus, the threshold issue is whether the conduct of

these Pfizer employees can bind the Retirement Committee under the doctrine of apparent authority.[26]

"Apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 989 (3d Cir. 1995) (quoting Restatement (Second) of Agency § 8 cmts. a & c (1958)). As the Third Circuit has explained in the context of fiduciary obligations under ERISA: "apparent authority (1) 'results from a manifestation by a person that another is his agent' and (2) 'exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized.'" Id. (internal quotation marks omitted).[27]

Contrary to Plaintiff's contention, neither of these elements of apparent authority are satisfied with respect to Ms. Breen. Plaintiff admits that Ms. Breen was "not responsible for, nor was she provided with training, concerning employee benefits." Def. Facts, ¶ 16. Plaintiff further admits that "it was not within Ms. Breen's scope of responsibility to provide specific information concerning benefits offered to employees affected by AtS during the ONM." Id. Significantly, Plaintiff also admits that "Ms. Breen instructed employees to review their Separation Kits, or contact Ernst & Young or HR Source with any questions concerning

---

[26] Because I have already concluded that neither Pfizer nor these Pfizer employees were fiduciaries for purposes of the Pension Plan and AtS pension enhancement, see supra Part III.B, I focus my analysis solely on Plaintiff's contention that, under the doctrine of apparent authority, these employees' conduct can be attributed to the Retirement Committee in its fiduciary capacity.

[27] Thus, in Taylor, where the Defendants admitted that a non-fiduciary representative, Burgunder, "had actual authority to 'advise[] employees of their rights and options under the Pension Plan,'" id. at 988, and where both the plaintiff "actually believed that Burgunder had the authority to counsel plan participants about possible changes in the plan" and other "evidence demonstrate[d] that plan participants generally considered Burgunder the person to speak with regarding possible changes in retirement benefits," the Third Circuit found it appropriate to hold the actual ERISA fiduciary liable for any statements Burgunder made regarding the plan. Id. at 989.

benefits." Id. In light of these facts, neither prong of the apparent authority doctrine is satisfied as to the communications with Ms. Breen. Plaintiff's admissions confirm that there was no manifestation on the part of the Retirement Committee that Ms. Breen was acting as its agent, and that Plaintiff did not consider Ms. Breen to be responsible for providing specific information on employee benefits. Thus, because Ms. Breen's communications with Plaintiff at the ONM did not occur in the capacity as an agent, real or apparent, of the fiduciary, there can be no liability for breach of fiduciary duty based on any statement Ms. Breen made to Plaintiff regarding benefits under the Pension Plan or AtS. Cf. Taylor v. Peoples Natural Gas Co., 49 F.3d at 988-89.

Plaintiff's remaining contention is that he spoke with two other, unnamed, Pfizer employees via the 212 hotline number provided to him at the ONM meeting, first sometime between July 5 and 7, and again on July 13, 2009.[28] Plaintiff, however, points to nothing in the record that shows that the Retirement Committee designated the 212 hotline as a number for questions regarding plan administration. No documents that Plaintiff received related to the Pension Plan, including those in the Separation Kit – contain any reference to a 212 hotline. Instead, all documents direct employees with questions regarding their AtS termination to

---

[28]     Plaintiff testified in his deposition that he called the 212 hotline on July 10, 2009 and left a message, and then received a call back from someone at that number on July 13, 2009. Pl. Counter. Facts, ¶ 10. According to Plaintiff, following his call on July 13, he decided to execute his employment agreement with Mylan. Id. at ¶ 11.

        Plaintiff also references additional phone calls and communications with HR Source and/or Ernst & Young that occurred after he begin working at Mylan. Plaintiff admits that anything he was told after he began work at Mylan would not have affected his decision to terminate his employment with Pfizer prior to September 1, 2009. Def. Facts, ¶ 50 n.4; Pl. Dep. at 114:24 to 115:17. Because Plaintiff cannot show detrimental reliance on these calls, these communications are irrelevant to Plaintiff's breach of fiduciary duty claim against the Retirement Committee. See Daniels v. Thomas & Betts Corp., 263 F.3d at 73 (detrimental reliance necessary element of breach of fiduciary duty claim).

contact two entities: HR Source and Ernst & Young, both of which have toll-free 800 or 866 numbers.

In that connection, Plaintiff has not shown that it was reasonable for him to believe that the representatives at the 212 number were acting as agents of the Retirement Committee. Plaintiff never testified that any representative held himself of herself out as an authority on benefits under the Pension Plan or AtS initiative, nor did Plaintiff testify that he inquired of these representatives if they had the authority to speak on plan matters.  Significantly, Plaintiff's own notes from the July 2, 2009 ONM identify the 212 hotline as a number only used to "[i]nform [Pfizer] about 'new jobs.'"  Pl. ONM Notes, 2 (emphasis in original).[29]  Nowhere in these notes does Plaintiff connect the 212 number to benefits information.  Moreover, unlike in Taylor, there is no evidence that anyone else at Pfizer believed that the 212 number should be used "to speak with [someone] regarding possible changes in retirement benefits."  Taylor v. Peoples Natural Gas Co., 49 F.3d at 989.  Thus, as with Ms. Breen, because Plaintiff has failed to show that his communications with representatives at the 212 hotline occurred in these representatives' capacities as agents, real or apparent, of the fiduciary, there can be no liability for breach of

---

[29]  Plaintiff's ONM Notes are attached as Exhibit A to the Supplemental Declaration of John M. Nolan, Esq.  See Dkt. No. 26-3.
    While Plaintiff alleged in his Complaint that this 212 hotline number was the number for HR Source, Plaintiff's own notes now undisputedly establish that this phone number refers to an "exit hotline."  See Pl. ONM Notes, 2.  Moreover, all other references to HR Source in the Pension Plan documents and the other materials Plaintiff received in connection with his termination under AtS list a toll-free "866" number for HR Source, and Plaintiff has pointed to nothing else in the record identifying the 212 hotline as an HR Source number.  To the extent that Plaintiff nevertheless continues to challenge this fact, his challenge fails at the summary judgment stage.  Plaintiff has failed to meet his burden of demonstrating that there is a genuine dispute that the 212 hotline was a number for HR Source or, for that matter, any other entity designated by the Retirement Committee to answer questions regarding employee benefits.  See Celotex Corp. v. Catrett, 477 U.S. at 324 (explaining that the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'").

fiduciary duty based on any statements the 212 hotline representatives may have made to Plaintiff regarding benefits under the Pension Plan or AtS.

Plaintiff has not demonstrated that any of the Pfizer employees he spoke to regarding his impending termination can be considered agents of a fiduciary. As Plaintiff has advanced no other basis for his breach of fiduciary duty claim with respect to the Retirement Committee, I conclude that Plaintiff's claim against the Retirement Committee fails as a matter of law.

## VI. CONCLUSION

For the reasons set forth above, this Court grants Defendants' Motion for Summary Judgment. An appropriate order follows.


Date: September 17, 2013                              /s/ Freda L. Wolfson_____
                                                     Hon. Freda L. Wolfson, U.S.D.J.